# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOEL A. GUEMBES**, | Case No. 3:16-cv-1950-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL**, Commissioner of Social Security, | |
| Defendant. | |

George J. Wall, 1336 E. Burnside St., Suit 130, Portland, OR 97214. Of Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hébert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Joel Guembes ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his application

for Supplemental Security Income ("SSI") pursuant to the Social Security Act. Because the

Commissioner's decision is not based on the proper legal standards and the findings are not

supported by substantial evidence, the decision is REVERSED and REMANDED for further

proceedings consistent with this opinion.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th

Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this Court may not substitute its judgment

for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193,

1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may

not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495

F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th

Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554

F.3d at 1226.

**BACKGROUND**

## A. Plaintiff's Application

Plaintiff filed his application for SSI that is the subject of this case on November 3, 2011, alleging disability beginning on April 1, 2006. AR 318. Born October 4, 1989, Plaintiff was 16 years old when he suffered a traumatic brain injury in an automobile accident, and 22 years old on his alleged disability onset date. AR 426, 137. Plaintiff alleges "short and long term memory defects, difficulty learning new material, poor impulse control, poor concentration, impaired balance, and depression." AR 393. The Commissioner denied Plaintiff's application initially on January 30, 2012, and on reconsideration on May 15, 2012. AR 146, 158.

On May 25, 2012, Plaintiff requested a hearing to review the denial of SSI. AR 200. Administrative Law Judge ("ALJ") Paul G. Robeck presided over a hearing on June 13, 2013. AR 208. The ALJ issued a decision finding that Plaintiff was not disabled on June 24, 2013. AR 160. The ALJ found Plaintiff had severe impairments of cognitive disorder, mood disorder and polysubstance dependence. AR 165. The ALJ found Plaintiff was limited to jobs requiring reasoning level of one and noise level of two, could not perform work requiring balancing, working at heights, or climbing ladders, ropes, and scaffolds, and that Plaintiff should avoid concentrated exposure to hazards. AR 167. Plaintiff requested a review of the ALJ's decision by the Appeals Council on July 2, 2013. AR 268. The Appeals Council vacated and remanded the ALJ's decision on November 7, 2013, after finding several of the jobs the ALJ had identified exceeded Plaintiff's residual function capacity ("RFC") because they required a reasoning level of two. AR 184. The Appeals Council directed the ALJ to consider new evidence; evaluate Plaintiff's impairments with the techniques described in 20 CFR § 416.920(a); evaluate Plaintiff's RFC by providing appropriate rationale and specific reference to evidence in the record; obtain supplemental evidence from a vocational expert ("VE") to clarify the effect of

PAGE 3 – OPINION AND ORDER

Plaintiff's limitations; and identify appropriate jobs for Plaintiff and state the incidence of such

jobs in the national economy. AR 185.

A second hearing was held in front of ALJ Robeck on August 11, 2015. AR 298. On

October 9, 2015, the ALJ issued his second decision, and again found Plaintiff not disabled.

AR 14. The ALJ made findings consistent with his first findings regarding Plaintiff's severe

impairments, inability to perform certain tasks, and an RFC limiting Plaintiff to a reasoning level

of one; however, this time the ALJ found that Plaintiff was limited to a noise level of three.

AR 19-23. Plaintiff requested that the Appeals Council review the ALJ's second decision.

AR 10. The Appeals Council, finding no reason under their rules to review the ALJ's decision,

denied Plaintiff's request for review on August 31, 2016, and the ALJ's decision became the

final decision of the Commissioner. AR 1. Plaintiff seeks review of that decision.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

> 1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
>     §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
>     significant mental or physical duties done or intended to be done for pay
>     or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
>     such work, she is not disabled within the meaning of the Act. 20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity." This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ applied the sequential analysis described above. At step one, the ALJ found that

Plaintiff had not engaged in any substantial gainful activity after the application date of

November 3, 2011. AR 19. At step two, the ALJ found that Plaintiff had the severe impairments

of cognitive disorder, mood disorder, and alcohol and polysubstance dependence in reported

remission. AR 20. At step three, the ALJ concluded that Plaintiff's impairments did not meet the

criteria of any listed impairment singularly or in combination under 20 CFR §§ 416.920(d),

416.925 or 416.926. AR 20. The ALJ found that the Plaintiff had mild restriction in activities of

daily living, moderate difficulties in social functioning, moderate difficulties in concentration,

persistence, or pace, and no episodes of decompensation for an extended duration. AR 21-22.

The ALJ determined that Plaintiff has the RFC to perform medium work limited to

occasional public contact; without working as part of a team; without climbing ladders, ropes, or

scaffolds; without working at heights; and with avoiding concentrated exposure to hazards.

AR 23. The RFC further stated that Plaintiff is limited to jobs with a noise level of three and a reasoning level of one. AR 23. At step four, the ALJ found that Plaintiff had no past relevant work. AR 43. At step five, the ALJ found Plaintiff capable of performing jobs that exist in significant numbers in the national economy based on Plaintiff's age, education, work experience, and RFC. AR 43. Based on the VE's testimony, the ALJ identified jobs listed in the Dictionary of Occupational Titles ("DOT"), including motel housekeeper, advertising material distributer, and window cleaner, as jobs suited to Plaintiff's criteria. AR 44. As a result of the five-step analysis, the ALJ found Plaintiff "not disabled" from the filing date of Plaintiff's application to the date of the hearing, and rejected Plaintiff's application for SSI. AR 44.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) failing to incorporate all the limitations assigned by Dr. Ronald Sandoval, PhD into the RFC findings and dispositive hypothetical question after assigning his opinion "great weight"; (B) failing to provide sufficient reasoning by stating how a noise level three environment is appropriate given the medical evidence and Plaintiff's problems with distraction to enable the Court to conduct a meaningful review; and (C) failing to incorporate the State Agency psychologists' opinions that Plaintiff would benefit from vocational rehabilitation into the RFC and dispositive hypothetical question. The Court addresses each assignment of error in turn.

### A. Limitations Identified by Dr. Sandoval

Plaintiff argues that the ALJ erred by failing to incorporate all the limitations identified by Dr. Sandoval into Plaintiff's RFC and the hypothetical question posed to the VE after the ALJ gave the doctor's opinion "great weight." An ALJ must make fairly detailed finding in support of the administrative decision to permit a court to review those decisions intelligently but need not discuss all evidence presented. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir 1984). The ALJ

PAGE 7 – OPINION AND ORDER

must explain why significant probative evidence was rejected; however, failure to discuss non-significant or non-probative evidence does not require reversal. *Id*. When an ALJ's hypothetical question to a VE fails accurately to reflect a claimant's physical limitations, the ALJ may not rely on the VE's opinion in denying benefits. *Embrey v. Bowen*, 849 F.2d 418, 422-423 (9th Cir. 1988).

The ALJ acknowledged Dr. Sandoval's opinion within the section discussing Plaintiff's RFC. AR 37. Dr. Sandoval opined that Plaintiff needs (1) communications, whether written or auditory, to be constructed in brief pieces of information, (2) instructions to be repeated, and (3) assignments to be broken down into smaller manageable components. AR 574. The ALJ specifically referenced these statements, gave Dr. Sandoval's opinion "great weight," and found that "[a]ccordingly, the residual functional capacity limits the claimant to jobs with a reasoning level of one and a noise level of three." AR 37. The DOT defines reasoning level one as the ability of to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *See* DOT App'x C (1991), *available at* 1991 WL 688702. Noise level three involves no more than a moderate level of noise, with environments comparable to a "business office where type-writers are used; department store; grocery store; light traffic; fast food restaurant at off-hours." *See* U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO"), App'x D (1993).

The Commissioner argues that the RFC accounted for and was consistent with the limitations identified by Dr. Sandoval. An ALJ is not required to provide reasons to discount an opinion where the ALJ does not reject the conclusions but rather incorporates them into an RFC

assessment that is consistent with the opinion. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). An ALJ is responsible for "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). The issue is whether the RFC did or did not incorporate the limitations identified by Dr. Sandoval.

The Court finds that the RFC sufficiently incorporates the limitations identified by Dr. Sandoval. The Ninth Circuit opinion in *Rounds* is persuasive authority for this conclusion. In *Rounds*, a doctor opined that the plaintiff should request that instructions be repeated and provided both verbally and in writing, and plaintiff should be limited in customer and public contact. *Rounds*, 807 F.3d at 1005. The Ninth Circuit held that an RFC that limited the plaintiff to "one to two step tasks with no public contact, no teamwork and limited coworker contact" adequately incorporated the opinions of the doctor. *Id.* at 1006.

Similar to *Rounds*, here the ALJ adequately incorporated Dr. Sandoval's opinion that Plaintiff needs instructions repeated by limiting Plaintiff to reasoning level one work. Reasoning level one requires a person to "[a]pply commonsense understanding to *carry out simple one- or two-step instructions*." DOT App'x C (emphasis added). The one- or two-step instruction limitation of reasoning level one is essentially the same limitation as in the RFC in *Rounds*, which the Ninth Circuit held adequately incorporated the need to have instructions repeated. Thus, Dr. Sandoval's limitation that instructions be repeated was adequately incorporated into Plaintiff's RFC.

Furthermore, the ALJ incorporated the other two limitations identified by Dr. Sandoval. It is a rational reading of the evidence that a one- or two-step instruction necessarily entails delivering the instruction in a brief piece of information and a smaller manageable component.

Where the ALJ's interpretation is a rational reading of the record, even if there is more than one

rational interpretation, the ALJ's interpretation must be upheld. *Burch*, 400 F.3d at 679;

*Batson*, 359 F.3d at 1193. Therefore, the ALJ's RFC adequately incorporated all of

Dr. Sandoval's limitations.

## B.  Limitation of Noise Level Three

Plaintiff argues that the ALJ did not adequately account for Plaintiff's problem with

distraction into the RFC or provide a clear statement of the agency's reasoning for setting

Plaintiff's limitation at noise level three that would "allow[] for meaningful review" by the

Court. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).[1] The ALJ must set forth

reasons for denying disability insurance benefits in a way that allows for meaningful review. *Id.*

A clear statement for the reasoning is necessary because a court can only affirm the agency's

decision to deny benefits on grounds invoked by the agency. *Id.* (citing *Stout v. Comm'r, Soc.*

*Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006)). Meaningful review requires access to the

facts and reasoning supporting a decision. *Bray*, 554 F.3d at 1226. Where evidence is susceptible

to more than one rational interpretation, the ALJ's conclusion must be upheld. *Burch*, 400 F.3d

at 679.

The RFC is the maximum a claimant can do despite his or her limitations. *See* 20 C.F.R.

§§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all

of a claimant's impairments, even those that are not severe, and evaluate all of the relevant

medical and other evidence, including the claimant's testimony. *See* Social Security Ruling

---

[1] Plaintiff states that the ALJ did not create a "logical bridge" between the medical
evidence and setting Plaintiff's limitation at noise level three. The "logical bridge" test derives
from a Seventh Circuit opinion, but Plaintiff does not cite any Ninth Circuit opinion that has
adopted such test. Therefore, the Court analyzes whether the ALJ's decision allows for
meaningful review.

("SSR") 96-8p, *available at* 1996 WL 374184. The ALJ is responsible for resolving conflicts in

the medical testimony and translating the claimant's impairments into concrete functional

limitations in the RFC. *Stubbs-Danielson*, 539 F.3d at 1174. All limitations supported by

substantial evidence must be incorporated into the RFC and, by extension, the dispositive

hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th

Cir. 2001).

The SCO is the companion manual to the DOT and provides examples of workplaces that

involve different levels of noise. *See* SCO App'x D. Workplaces at noise level three have

moderate noise and include business offices where typewriters are used, department stores,

grocery stores, light traffic, and fast food restaurants at off hours. *Id.* Workplaces at noise level

two have quiet noise and include libraries, many private offices, funeral receptions, museums,

and golf courses. *Id.*

Here, the RFC limits Plaintiff to jobs involving exposure to at most moderate noise, or

noise level three. AR 23. The ALJ stated, "[t]o reduce distraction, he is limited to jobs with a

maximum noise level of three that requires no more than occasional public [contact] and no work

as part of a team with coworkers." AR 39. In the ALJ's first determination before remand by the

Appeals Council, the ALJ found that Plaintiff would be limited to noise level two. AR 167. In

posing the hypothetical to the VE in the second hearing, after remand from the Appeals Council,

the ALJ also started with Plaintiff limited to noise level two. AR 79. Only when the VE could

not come up with any jobs that were both consistent with reasoning level one and noise level two

(AR 79-81) did the ALJ increase to noise level three in a second hypothetical. AR 82.

Plaintiff contends that the medical evidence detailing his problems with distraction limits

him to jobs involving exposure to at most noise level two. Plaintiff asserts that the ALJ appears

to have engaged in "results-based adjudication"—raising Plaintiff's noise level to three because otherwise there were no jobs that Plaintiff could perform with all of his other limitations. Plaintiff argues that the ALJ's reason to limit Plaintiff to noise level three is not sufficiently clear to allow for meaningful review by the Court.

There is ample medical evidence in the record demonstrating Plaintiff's problems with distraction, attention, and related limitations. As previously noted, Dr. Sandoval, whose opinion was given "great weight" by the ALJ, found that "[a]s the amount of auditory information was increased, [Plaintiff's] ability to process this was disproportionately decreased. As a consequence, for examples, on 2 of the latter test items, the test questions had to be repeated to [Plaintiff] 4 times." AR 570. Dr. Sandoval additionally found that "[Plaintiff's] auditory span is impaired and much smaller than the average person." AR 573. Dr. Margaret Sutko, a Ph.D., wrote a Psychology Summary and Recommendations for Plaintiff in May 2006. AR 550. Dr. Sutko found that Plaintiff's injury had a significant impact on his attention span, mental fluency, and processing speed and that he needed complex communications to be repeated. AR 550. Plaintiff had decreased visual spatial perception and decreased capacity to regulate thoughts, actions, and emotions, which resulted in impulsivity. AR 551. Dr. Sutko recommended decreasing distractions and repeated exposure to the same information. AR 550. The ALJ referenced Dr. Sutko's examination and the majority of this evidence when determining Plaintiff's RFC. AR 25.

Plaintiff also cites the 2013 medical opinion of Dr. Thomas Smurthwaite, PhD. AR 884-96. After conducting an assessment on April 5, 2013, Dr. Smurthwaite stated that Plaintiff's testing showed "a fully oriented patient estimated to be of average premorbid intelligence who tested within normal limits in many cognitive domains, but problems were found." AR 891.

Plaintiff had significant difficulties with attention and working memory. AR 889. Testing did not

strongly suggest an executive-based fluency problem but suggested overall verbal slowness,

likely indicating that Plaintiff had difficulty in dividing attention. AR 890. His executive

functioning testing had mixed results, showing some cognitive inefficiency, poor strategy

formation, difficulty with working memory, and significant slowness when a switching

component was added. AR 890. Plaintiff also demonstrated focal executive functioning

difficulties, which are mental control processes necessary to coordinate complex tasks and

manage changing environmental conditions. AR 892. Dr. Smurthwaite stated that deficient

executive functioning might affect many areas: organization; planning; behavior; working

memory; regulating attention and emotions; problem solving; applying feedback; and taking

corrective action. AR 892. Dr. Smurthwaite encouraged Plaintiff to stay in psychotherapy,

continue doing vocational rehabilitation, work slowly when engaged in tasks, and suggested

Plaintiff "might benefit from using earplugs" to minimize distraction. AR 893.

The ALJ considered additional evidence after the Appeals Council vacated and remanded

his first decision. A form in this new evidence clarified the purpose and findings of

Dr. Smurthwaite's assessment:

> The assessment I conducted on 4/5/2013 was designed to address
> medical diagnosis and treatment concerns. It was not designed to
> provide a comprehensive evaluation of the patient's employability,
> and thus this was not addressed in the assessment. However, there
> were several findings which would have implications for the
> patient's ability to hold down a job.

AR 996. Dr. Smurthwaite stated that his findings may indicate Plaintiff will have difficulty

maintaining concentration, adequately using feedback from supervisors, maintaining a pace

necessary for work, and effectively managing relationships with coworkers. AR 996. After

considering this form and other additional evidence, the ALJ found the additional evidence

considered upon remand "does not strengthen the claimant's application. It does not show the claimant's condition was worse than described in the previous decision." AR 43.

The ALJ cited to Dr. Smurthwaite's finding when creating Plaintiff's RFC. AR 38-40. The ALJ gave the opinion of Dr. Smurthwaite partial weight because it was generally consistent with objective findings, but did not give it full weight for various reasons. First, the complaints of fatigue were inconsistent with Plaintiff's denial of fatigue to Dr. Meyer. AR 39. Second, the assessment was designed to address medical diagnosis and treatment concerns and not as a comprehensive evaluation of Plaintiff's employability. AR 40. Lastly, Dr. Smurthwaite did not describe the efficacy of Plaintiff's treatment regimen nor describe the effects of substance abuse, treatment, and vocational rehabilitation. AR 40.

The ALJ's reasons for choosing noise level of three are stated briefly throughout his opinion. After noting Dr. Sandoval's finding, the ALJ states, "[a]ccordingly, the residual capacity limits the claimant to jobs with a reasoning level of one and a noise level of three." AR 37. After noting the original evidence from Dr. Smurthwaite's, the ALJ states, "[t]o reduce distraction, [Plaintiff] is limited to jobs with a maximum noise level of three that require no more than occasional public [contact] and no work as part of a team with coworkers." AR 39. After considering Dr. Smurthwaite's additional medical evidence, the ALJ stated, "the [RFC] accounts for significant attentional difficulties and executive functioning difficulties by liming Plaintiff to noise level of three and a reasoning level of one." AR 40.

The ALJ did not adequately explain how the medical evidence supported a limitation of a noise level of three rather than two that would provide the Court the opportunity for meaningful review. An RFC assessment must include a narrative discussion describing how the evidence supports the conclusion. *See* SSR 96-8P, *available at* 1996 WL 374184, at *7. The evidence

supports attentional difficulties and a need for reduced distraction, but the ALJ did not provide

an explanation as to how noise level three drew from the medical evidence to address Plaintiff's

specific limitations. An ALJ cannot summarize evidence and merely posit a conclusion. *See*

*generally Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014).

The Court cannot meaningfully review how the ALJ decided that a moderate noise level

was appropriate. The evidence supports that Plaintiff has issues with distraction and that his

attentional issues correlate to executive functioning, memory, organization, self-regulation, and

productivity. A rational reading of the evidence would not support loud or very loud work

environments at noise levels of four and five. Further, noise level three is not appropriate when a

claimant cannot work around excessive noise. *See Gies v. Colvin*, 2016 WL 494969, at *13 (E.D.

Cal. Sept. 16, 2016). The question remains whether a moderate level of noise is appropriate for

Plaintiff, and the ALJ did not provide an adequate narrative to explain how he arrived at this

conclusion. Dr. Smurthwaite opined that Plaintiff needed "few distractions," including

distractions from noise. AR 893. The DOT classifies Plaintiff's part-time job at as a receptionist

at his college as a noise level two job. *See* SCO 237.367-038. Further, common sense dictates

that requiring reduced distraction for school testing correlates more closely to a quiet

environment like a library or private office, rather than a moderate level of noise similar to a

business office where typewriters are used. Although Plaintiff's school accommodation was

termed a "moderate distraction-reduced testing environment," the term "moderate" relates to

school testing environments rather than the SCO's spectrum of work environments. AR 1149.

The need for clear and specific reasoning to allow for meaningful review is even more

apparent here in light of the ALJ's original finding that Plaintiff could work in jobs with a

maximum of noise level two and the ALJ's first hypothetical question posed to the VE after

remand by the Appeals Council that focused on noise level two jobs. Although the ALJ's original assessment limiting Plaintiff to noise level two does not bind the ALJ or the Court, as part of the record, the original finding supports that even a moderate noise level may exceed Plaintiff's limitations. Further, after remand by the Appeals Council, the ALJ did not cite any new evidence supporting that Plaintiff had a higher threshold for distraction or noise than the evidence previously suggested, but merely stated that the new evidence did not strengthen Plaintiff's application or show the condition was worse than previously described. AR 43. Thus, the ALJ posed to the VE the first hypothetical with a restriction at noise level two. But the VE struggled to find noise level two jobs, commenting that he could find noise level three jobs. The VE ultimately did find some noise level two jobs, but they all had reasoning levels of two, which exceeded Plaintiff's RFC. Only then did the ALJ provide the second hypothetical, with the noise level raised to three.

Plaintiff notes that this appears to be an ends-driven analysis. The Court recognizes the sequence of events offers some support for this conclusion. Regardless, the ALJ's decision requires the Court to make more than "specific and legitimate inferences" about how the ALJ reached his decision and thus in order to conduct meaningful review, clearer reasoning and analysis is required. *Cf. Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (noting that a court can make "specific and legitimate inferences" when an ALJ summarizes "facts and conflicting clinical evidence in [a] detailed and thorough fashion, stating his interpretation and making findings" and thus provides "specific and legitimate explanations").

## C. Vocational Rehabilitation

Plaintiff's last assignment of error argues that the ALJ failed to incorporate the two opinions of Drs. Kordell N. Kennemer, Psy.D., and Paul Rethinger, Ph.D., that Plaintiff would benefit from vocational rehabilitation. AR 145, 156. Dr. Kennemer reviewed Plaintiff's records

PAGE 16 – OPINION AND ORDER

at the initial stage, and Dr. Rethinger reviewed at the reconsideration stage. Both stated in identical language that "[t]he clmt would benefit from voc rehab," [*sic*] in response to the same question in a questionnaire asking the doctors to explain in narrative form Plaintiff's adaptation limitations. AR 145, 156.

The ALJ did not err in failing to include these two recommendations into the RFC. The RFC is the maximum a claimant can do despite his or her limitations. *See* 20 C.F.R. 20 C.F.R. §§ 404.1545, 416.945. Plaintiff cites no case law finding that an ALJ erred by failing to incorporate suggested vocational rehabilitation as a limitation into an RFC. Plaintiff's RFC reflected the maximum Plaintiff could do despite his limitations. Although Plaintiff may stand to benefit from vocational rehabilitation, that fact is irrelevant to what Plaintiff can do at the time the RFC was formulated, before any rehabilitation. Moreover, these doctors' statements were recommendations and not imperatives, and thus were not required to be included in the RFC even if they were related to Plaintiff's performance ability. *See Carmickle v. Comm'r Soc. Sec.*, 533 F.3d 1155, 1165 (9th Cir. 2008).

## D. Remand

Plaintiff argues the ALJ's erred and there are no outstanding issues that must be resolved, thus this case should be remanded for immediate payment of benefits. Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has

PAGE 17 – OPINION AND ORDER

been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100.

The Court has found that the ALJ erred in determining Plaintiff's RFC by failing to explain the decision to limit Plaintiff to noise level of three. The issue remains unresolved however, sufficient to preclude a remand for immediate payment of benefits. Although the ALJ did not sufficiently explain his reasoning in setting Plaintiff's noise level, ambiguity remains as to the noise level limitation that is appropriate.[2] Further investigation or assessment into the information provided by the medical sources of record, or possibly even seeking additional medical information, may be helpful in resolving this ambiguity.

## CONCLUSION

The Commissioner's decision that Mr. Guembes was not disabled is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

DATED this 29th day of September, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

[2] The Court notes that to the extent it is found, with sufficient reasoning and analysis provided, that the appropriate noise level limitation for Plaintiff is three, two of the jobs accepted by the ALJ in this case were still in error. Specifically, Plaintiff's RFC limits him from working at heights and from climbing on ladders, ropes, and scaffolds, and yet the ALJ found that Plaintiff could perform the job of window cleaner. The VE testified that a person who cannot be exposed to heights could not perform the job of window washer. AR 86. Moreover, the SCO confirms that window cleaning requires frequent climbing. *See* SCO 389.687-014. The ALJ also found that Plaintiff could perform the job of advertiser distributor. Plaintiff, however, is limited to only occasional public contact. An advertiser distributor is required to distribute "from house to house, to business establishments, or to persons on [the] street, following oral instructions." DOT 230.687-010, *available at* 1991 WL 672162.